HENRY G. KIDNEY & another vs. ALDEN D. STODDARD.

A., in a written representation that B. was entitled to credit, concealed the fact that B. was a minor, with the view to give him a credit, knowing or believing that he would not obtain credit if that fact was known : C. sold goods to B. on credit, upon the faith of A.'s representation : B. did not pay for the goods, but left the country, and went on a whaling voyage. *Held*, that A. was guilty of an actionable fraud, and that C. was entitled to recover of him the amount of the goods, without first bringing an action therefor against B.

TRESPASS upon the case for an alleged fraudulent representation by the defendant as to the credit of his son, Alden D. Stoddard, jr., in the following letter to F. Delano of New York : " Fairhaven, 9 mo. 27th 1841. Franklin Delano, Esq. My Dear Sir : The bearer, my son, A. D. Stoddard, jr., wishes to purchase a bill of goods in your city. Any assistance you can render him, by a recommendation or otherwise, will be gratefully received by him, and much oblige your obedient servant, who will take the liberty to say that A. D. S. jr.'s contracts, of whatever nature, will unquestionably be punctually attended to. Very respectfully your friend, A. D. Stoddard."

At the trial before *Wilde,* J., one Ammidon testified that he was agent of the plaintiffs ; that Stoddard, jr. called on him, in New York, about the 1st of October 1841, to purchase some goods, and referred him to Delano ; that the witness called on Delano, who showed said letter to him, and stated that he was not acquainted with the young man, but knew his father and believed him to be a responsible man ; that from the knowledge he had of him, he should believe he would see his son through ; and that, on the strength of the letter, he should sell the young man goods to the amount of four or five hundred dollars : That the witness, at that time, sold to the son goods to the amount

of $260, and afterwards to the amount of $158·50: That the son afterwards applied for more goods, but the witness refused to sell to him : The witness testified that he would not have sold him the goods, had it not been for the said letter and the representations of Delano ; that no part of the debt had ever been paid ; that he had never attempted to recover the amount of the young man ; that he had called on the defendant to effect a settlement, and told him that he (the witness) had understood, since the sales, that his son was a minor at the time the letter was written ; that the defendant admitted that such was the fact, refused to pay the debt, and stated that his son had gone to sea on a whaling voyage.

There was other evidence to show that the son was a minor when the letter was written, being between twenty and twenty one years of age, and that he had then been in business, as a dealer in hats, a year or more.

The judge instructed the jury that when a party intentionally conceals a material fact, in giving a letter of recommendation, it amounts to a false representation ; that the defendant, giving a letter in this case to an unlimited amount, was bound to communicate every material fact ; that if he concealed the fact that the son was a minor, with the view to give him a credit, knowing or believing that he would not get a credit if that fact was known, it was a fraud, and the plaintiff was entitled to recover ; that it was immaterial whether there was any moral fraud ; and that every man was presumed to know the conse- quences of his own acts.

The defendant's counsel requested the judge to instruct the jury, that if the defendant gave his opinion merely, he was not bound to communicate any facts ; and that if he gave an honest opinion, he was not liable. But the judge refused so to instruct the jury. It was also contended by the defendant's counsel, that the plaintiffs should have made an effort to recover the debt of the son.

The jury found a verdict for the plaintiffs, for the amount of the goods sold, and the defendant moved for a new trial, on the ground that the jury were misdirected in matter of law

*Colby,* for the defendant.

*Eliot,* for the plaintiffs.

HUBBARD, J. This cause has been argued with ability and feeling by the counsel for the defendant who, it has been urged, was a father, and whose letter was written with strong expressions of parental confidence and affection, and at the same time without false allegations in it. But while sympathy for a client is highly praiseworthy on the part of counsel, the court are required not to yield to sympathies, or to give way to compassion ; but to administer the law in its integrity, although it may seem to bear hardly in particular instances. To bend the rules of law, to avoid the pressure in individual cases, would produce uncertainty in the law itself, and in the end be subversive of justice.

It is argued that the jury were compelled to find for the plaintiffs, on the mere concealment of a single fact by the defendant ; or, in other words, that the charge of the presiding judge was erroneous. But the jury were not directed to return a verdict for the plaintiffs, unless they found, as a fact, that the defendant concealed that his son was a minor, with a view to give him a credit, and knowing or believing that he would not obtain a credit if that fact were known.

It is very certain, as has been maintained by the defendant's counsel, that a mistaken opinion, honestly given, can never be taken as a fraudulent representation. This is true in principle, and supported abundantly by authorities. But the misfortune of the defendant's case is, that the verdict of the jury rests not on the honest mistake of the defendant, but upon the ground of material concealment of a fact especially within his knowledge ; a fact important to be known, as it regarded the credit of the son ; a fact designedly concealed, and with the view of obtaining that credit for the son, which he, the father, knew or believed he could not obtain if that fact were known.

It needs no lengthened argument to establish the materiality of the fact. The result of this case is a sufficient witness of it. The plaintiffs were induced by the letter, from which this fact was carefully excluded, to give a credit to the son,

which they would not otherwise have given ; and as the direct consequence of it, they have sustained the loss set out in the declaration. Here then are proved fraud and deceit on the part of the defendant, and damage to the plaintiffs ; and these facts have long been held to constitute a substantial cause of action. From the time of the judgment in the great case of *Pasley* v. *Freeman*, 3 T. R. 51, to the present day, through the long line of decisions both in England and America, the principle of that case, though with some statute modifications, remains unshaken and unimpaired.

The case at bar has been likened to that of *Tryon* v. *Whitmarsh*, 1 Met. 1 ; and the letters in the two cases have much similarity. But in that case, in which the authorities were carefully examined by the court, it was decided that the letter might have been written with an honest conviction of the truth of the assertions contained in it. But in the case at bar, there was the designed concealment of a fact, with intent to procure a credit, which could not be obtained if the fact were made known ; and this the defendant well knew or believed. We think that the principles laid down in that case, though the verdict was set aside, are decisive of the present case. The court there say, " we are therefore of opinion that the question for the jury was, whether the defendant knew that the assertion or opinion contained in his letter was false, or that he did not fully believe it to be true ; or whether he did not conceal a material fact from the knowledge of the plaintiffs, with the intention to deceive them. It is true, as the defendant's counsel have argued, that the defendant was not bound to disclose the facts on which his opinion was founded ; but if he kept back any material fact, with the intent to deceive the plaintiffs, this would be fraudulent." So in *Lobdell* v. *Baker*, 1 Met. 201, a case, though very different in its facts, yet having features of resemblance to this, the court say, " there was no evidence that the defendant made any express declaration that the note sold was a valid note, and that the makers and indorsers were liable ; but we are all of opinion that if he fraudulently procured the indorsement of Swan, and then authorized Winslow to sell the note,

without erasing the name of Swan, *knowing as he did that Swan was a minor, and not by law liable on the note,* all this would be equivalent to an express affirmation that the note was a valid contract, on which the makers of the note and the indorsers were by law liable."

It was also argued, in arrest of judgment, that the plaintiffs could not recover, because they had made no attempt to procure the debt from the son ; but it being apparent that the declaration set forth a good cause of action, the defendant's counsel, waiving the motion in arrest, argued that the plaintiffs had not made out a case for damages, because they had not prosecuted the claim against the son to final judgment ; as infancy is only a personal privilege, and there is no certainty he would take advantage of it, and the court cannot presume that he will not pay an honest debt. But the son did not pay the demand when due. The plaintiffs therefore sustained the loss of which they complain, by reason of the false representation ; and the injury being complete, the cause of action accrued without prosecuting a suit against the son. And supposing the question turned on the point whether the plaintiffs had used due diligence to collect the demand of the son ; then it might well be replied, that when the plaintiffs came to the knowledge of the fact that the son was a minor, and applied to the father for a settlement, he refused to pay the debt, and informed them that his son had gone to sea on a whaling voyage. If therefore the plaintiffs had been bound to pursue the son in the first instance — as we think they were not — still this state of facts would have justi fied them in not prosecuting the son before looking to the father for redress ; nor does it call on them to await his return. *Ad vana seu impossibilia non cogit lex.* The jury then having estab· lished the fraud and deceit on the part of the defendant, and the damage to the plaintiffs, the motion to set aside the verdict is overruled.

*Judgment on the verdict*